UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

PIAZZA'S SEAFOOD WORLD, LLC                        CIVIL ACTION

VERSUS                                             NO. 04-690

BOB ODOM, COMMISSIONER, LOUISIANA                  SECTION "A"(1)
DEP'T OF AGRICULTURE & FORESTRY

                         **ORDER AND REASONS**

   Before the Court are a **Second Motion for Partial Summary Judgment on Defendant's Counterclaim (Rec. Doc. 74)** filed by defendant, Bob Odom, individually and in his capacity as Commissioner of the Louisiana Department of Agriculture and Forestry ("the Commissioner" or "Defendant"), and a **Third Motion for Partial Summary Judgment (Rec. Doc. 68)** filed by plaintiff Piazza's Seafood World, L.L.C. ("Piazza" or "Plaintiff").  Both motions are opposed and were submitted for consideration on the briefs on August 8, 2007, and July 25, 2007, respectively.

   The Commissioner and Piazza each move the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment on the Commissioner's counterclaim for violations of the Lanham Act.  For the reasons that follow, Defendant's motion is DENIED and Plaintiff's motion is GRANTED.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Piazza imports seafood, including fish, crayfish, crabs, shrimp, and lobster, from various countries around the world. Piazza sells its imported seafood primarily through large national distributors. The distributors then sell the product to wholesale purchasers and end-users (restaurants) both in and outside of Louisiana. A small percentage of Plaintiff's products are sold to retail consumers.

On April 26, 2004, and September 10, 2004, Plaintiff amended its complaint to challenge parts D and E of La. R.S. § 3:4617. Subsections D and E of the statute, hereinafter referred to as "the Cajun Labeling Law," provide:

> D.  No person shall advertise, sell, offer or expose for sale, or distribute food or food products as "Cajun", "Louisiana Creole", or any derivative thereof unless the food or food product would qualify for the ten percent preference for products produced, processed, or manufactured in Louisiana under R.S. 38:2251 and R.S. 39:1595. Food brought into and processed in Louisiana shall not be considered as food or food products made in Louisiana, for purposes of this Section, unless the food has been substantially transformed by processing in Louisiana.
>
> E.  No person shall advertise, sell, offer or expose for sale, or distribute food or food products that do not qualify under this Section for labeling as "Cajun", "Louisiana Creole", or any derivative thereof in any packaging that would lead a reasonable person to believe that the food or food product

>           qualifies as "Cajun" or "Louisiana Creole"
>           food or food products, as defined in this
>           Section.

La. Rev. Stat. Ann. § 3:4617(D) & (E) (West Supp. 2004) (repealed in part by 2004 La. Acts 9).[1]  Section 3:4617 as originally enacted contained subsection F which provided as follows:

>   F.      The provisions of Subsections D and E of this
>           Section shall not infringe upon rights
>           acquired pursuant to any trademark or trade
>           name legally registered with the state of
>           Louisiana as of May 15, 2003.

Id. § 4617(E).  Effective May 6, 2004, the legislature repealed subsection F in its entirety.  2004 La. Acts 9.

Plaintiff asserts that its principal, Sal Piazza ("Piazza"), began marketing certain products under the brand names "Cajun Boy" and "Cajun Delight" sometime in 1976.  Plaintiff asserts that it has a substantial investment of money and time in promoting its Cajun Boy products and claims sales of over fifty million dollars in the last five years alone.  In 2000, Piazza registered the Cajun Delight name with the Louisiana Secretary of State.  In April 2003 Piazza registered the Cajun Boy trade name with the Secretary of State.

The Commissioner filed a counterclaim against Piazza under the Lanham Act.  On December 22, 2004, the Court granted partial

---

[1] This is the version of the statute that was in effect when this lawsuit was filed.

3

summary judgment in favor of Plaintiff and held that the Cajun Labeling Law, as applied in this case, was unconstitutional. Rec. Doc. 51. That ruling was affirmed by the Fifth Circuit. Piazza's Seafood World, LLC v. Odom, 448 F.3d 744 (5th Cir. 2006).

The Commissioner's Lanham Act claim has never been addressed by this Court or by the Fifth Circuit. The Commissioner's Lanham Act claim is grounded on the allegation that Piazza uses terms and symbols which are likely to cause confusion as to the origin of its products and/or misrepresent the geographic origin of its goods. (Rec. Doc. 40, Def. CC ¶¶ 19-20). Both parties now move for judgment as a matter of law on the merits of the Lanham Act claim.

**II. DISCUSSION**

***A. The Parties' Contentions***

The Commissioner seeks to enjoin Piazza from using any trademarks or brand names employing the word "Cajun," or any variation thereof, including Piazza's established Cajun Boy and Cajun Delight trade names. The Commissioner contends that using the term "Cajun" to market seafood products that are not grown, harvested, or processed in Louisiana infringes on Louisiana's certification mark which appears as follows:

4



The Commissioner argues that via the foregoing certification mark and via the legislature's enactment of the Cajun Labeling Law, Louisiana has obtained ownership and control over commercial use of the term "Cajun."

The Commissioner also asserts that Plaintiff's use of the term "Cajun" to market its imported products is likely to cause confusion as to the origin of the products.  The Commissioner contends that the term "Cajun" is synonymous with Louisiana so Piazza's use of the term in conjunction with its products is a misrepresentation, particularly in light of the fact that Louisiana is well-known for its seafood.

Plaintiff, on the other hand, argues that Louisiana does not own the word "Cajun" notwithstanding the foregoing certification mark which Plaintiff has never attempted to apply to its products.  Plaintiff also argues that the State could not have appropriated the word "Cajun" via the Cajun Labeling Law because this Court and the Fifth Circuit have found that statute to be unconstitutional.

Further, Plaintiff contends that a finding of Lanham Act liability would be inconsistent with this Court's prior Order and Reasons (Rec. Doc. 51), and the Fifth Circuit's affirmation of that ruling, because the Court has previously found that Piazza's use of the term "Cajun" is neither deceptive nor misleading.

***B.   Law and Analysis***

The Lanham Act defines a "certification mark" as follows:

> [A]ny word, name, symbol, or device, or any combination thereof--
>
> (1) used by a person other than its owner, or
>
> (2) which its owner has a bona fide intention to permit a person other than the owner to use in commerce and files an application to register on the principal register established by this chapter, to certify regional or other origin, material, mode of manufacture, quality, accuracy, or other characteristics of such person's goods or services or that the work or labor on the goods or services was performed by members of a union or other organization.

15 U.S.C.A. § 1127 (West Supp. 2007). The Act allows the owner to register the mark and to protect it in a manner similar to that applicable to trademarks. 15 U.S.C.A. § 1054 (West Supp. 2007). Certification marks are not registered by producers of the goods they protect. Lilian V. Faulhaber, Note, Cured Meat & Idaho Potatoes: A Comparative Analysis of European & American Protection & Enforcement of Geographic Indications of Foodstuffs, 11 Colum. J.

Eur. L. 623, 646 (2005).  Rather, the owner of the mark establishes the standards that products must meet in order to use the mark and then licenses the mark to producers who meet the mark's specifications.  Id.  Thus, certification marks, unlike trade marks, do not convey exclusive rights of use.  Id.  The Lanham Act grants the mark's owner a right of action against anyone infringing the mark, i.e., using the mark in a manner inconsistent with its use specifications.  See 15 U.S.C. § 1054; 15 U.S.C.A. § 1114 (West 1997 & Supp. 2007).  Geographical names or terms are commonly registered as certification marks.  See, e.g., Community of Roquefort v. William Faehndrich, Inc., 303 F.2d 494 (2d Cir. 1962) (the term "Roquefort" as applied to cheese is used exclusively to indicate that the same has been cured in the natural caves of Roquefort, France).

    The Court will assume for purposes of this analysis that Louisiana's Certified Cajun mark is entitled to protection under the Lanham Act and that the Cajun Labeling Law provides the use criteria for the mark.[2]  Thus, the Certified Cajun--Product of

---

[2] The State did not register the Certified Cajun mark in accordance with the Lanham Act.  Rather, Louisiana registered the mark with the office of the Louisiana Secretary of State in 1991.  Nevertheless, there is authority for the recognition of an unregistered certification mark under the Lanham Act when certain factual criteria are met.  See, e.g., State of Fla. v. Real Juices, Inc., 330 F. Supp. 428 (M.D. Fla. 1971).

Louisiana mark can only be affixed to food products that are manufactured, processed, or produced in Louisiana.  La. R.S. 3:4617(D); La. Rev. Stat. Ann. § 38:2251 (2005).  And food brought into Louisiana is not considered "Cajun" unless it has been substantially transformed by processing in Louisiana.  La. R.S. § 4617(D).

It is undisputed that Plaintiff's products are not manufactured, processed, or produced in Louisiana--they are imported from overseas.  Therefore, if Plaintiff were to affix the Louisiana mark to its products it would clearly be infringing the mark in violation of the Lanham Act.  However, Plaintiff has never used the Certified Cajun-Product of Louisiana mark on its products.  The Commissioner does not contend otherwise.  Rather, the Commissioner contends that by adopting the Louisiana mark, and having its permissible uses defined by the Cajun Labeling Law, the State has somehow commandeered the term "Cajun" so as to allow the State to exercise exclusive control over how the term is used, all under the auspices of the Lanham Act.

The Commissioner's position is not supported by the law. The term "Cajun" is but one piece of the mark which when combined with the ribbon symbol and the other text takes on a very specific meaning.  The State's certification mark does not consist of the term "Cajun" taken in insolation.  The Court

8

assumes that the State's mark is subject to protection under the Lanham Act, see footnote 1, supra, but it does not follow that the Lanham Act protects a single term that the State chooses to cull out of that mark.  The State's certification mark is not the term "Cajun" so the State cannot invoke the Lanham Act as a means to protect that term.

However, even assuming that the Commissioner owns the term "Cajun" as a certification mark, Plaintiff's use of the Cajun Boy and Cajun Delight trade names does not infringe the mark under these facts.  A geographic term like "Cajun" is can be the subject of Lanham Act protection as a certification mark.  In Community of Roquefort v. William Faehndrich, Inc., the court found that a domestic importer of cheese was infringing the plaintiff's "Roquefort" certification by selling cheese labeled as "Imported Roquefort Cheese" even though it was produced in Hungary and Italy.  303 F.2d 494, 496 (2d Cir. 1962).  The plaintiff had previously registered the term "Roquefort" such that as applied to cheese it would be used exclusively to indicate that the product had been cured in "the natural caves of the Community of Roquefort, Department of Aveyron, France."  Id.  For purposes of resale the defendant had removed the truthful country of origin packaging and replaced it with new wrappers which read "Imported Roquefort Cheese."  The court concluded that

9


this packaging was likely to cause confusion or mistake or to even deceive purchasers as to the origin or source of the product.  Id. at 498.  Thus, defendant's conduct infringed the plaintiff's certification mark.

Piazza's case is distinguishable from Roquefort because its product labeling clearly discloses the product's true country of origin.  Unlike Roquefort and State of Florida v. Real Juices, Inc., 330 F. Supp. 428 (M.D. Fla. 1971), a case upon which the Commissioner places much reliance, this case contains no element of "passing off" or deceptive labeling that allows Piazza's business to prosper by fooling or confusing the purchaser as to origin--conduct which would have taken this case out of the scope of the First Amendment.  Further, the deceptive nature of the labeling in Roquefort and Real Juices was exacerbated by the fact that the terms at issue, "Roquefort" and "Sunshine Tree" were identified with specific products, cheese and orange juice, which made the deception even more egregious.  The term "Cajun" on the other hand, is not exclusively associated with seafood notwithstanding that Louisiana is a state recognized for its seafood.  In sum, the Commissioner cannot prevail under the Lanham Act based on any infringement of the State's certification mark.

Aside from protecting geographic origin via certification

marks, § 1125 of the Lanham Act expressly precludes false designation of origin.  The Commissioner contends that Plaintiff's use of the Cajun Boy and Cajun Delight trade names violates § 1125.

15 U.S.C. 1125, entitled False Designations of Origin, False Descriptions, and Dilution Forbidden,  provides in relevant part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(A)(1) (West 1998 & Supp. 2007).  To sustain a false advertising and false designation of origin claim under the Lanham Act, a plaintiff must show that (1) the defendant made a false statement of fact about its product in commercial

11

advertisement, (2) the statement actually deceived or had a tendency to deceive a substantial segment of its audience, (3) the deception was material, in that it is likely to influence the purchasing decision, (4) the defendant caused the false statement to enter interstate commerce, and (5) the plaintiff has been or is likely to be injured as a result.  Mugworld, Inc. v. G.G. Marck & Assocs., Inc., No. 4:05-441, 2007 WL 2446539, at *8 (E.D. Tex. Aug. 23, 2007) (citing IQ Prods. Co. v. Penzoil Prods. Co., 305 F.3d 368, 375 (5th Cir. 2002); Logan v. Burgers Ozark Country Cured Hams, Inc., 263 F.3d 447, 462 (5th Cir. 2001); York Group, Inc. v. Horizon Casket Group, Inc., 459 F. Supp. 2d 567, 575-76 (S.D. Tex. 2006)).

The Commissioner cannot prevail on his § 1125 claim because using the Cajun Boy and Cajun Delight trade names to market Piazza's imported seafood is not a false statement of fact, a misrepresentation as to origin, or a misleading representation of fact *under the facts of this case* because Piazza's packaging clearly discloses the product's true origin.

In sum, Piazza is entitled to judgment as a matter of law on the Commissioner's Lanham Act claim.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Second Motion for Partial Summary**

**Judgment on Defendant's Counterclaim (Rec. Doc. 74)** filed by defendant, Bob Odom, individually and in his capacity as Commissioner of the Louisiana Department of Agriculture and Forestry is **DENIED**.  The Commissioner's counterclaim is dismissed;

**IT IS FURTHER ORDERED** that the **Third Motion for Partial Summary Judgment (Rec. Doc. 68)** filed by plaintiff Piazza's Seafood World, L.L.C. is **GRANTED**.

September 25, 2007

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

13